UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KENLEY EMERGENCY MEDICINE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE SCHUMACHER GROUP OF LOUISIANA INC., et al., <br><br> Defendants. | Case No.  20-cv-03274-SI <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISQUALIFY COUNSEL** <br><br> Re: Dkt. No. 189 |

Before the Court is defendants' motion to disqualify plaintiff-relator's counsel Sanjiv N. Singh, a Professional Law Corporation ("Singh"), and Phillips & Cohen LLP ("P&C"), and for other relief.  Dkt. No. 189 ("Mot.").  Defendants do not move to disqualify plaintiff-relator's counsel, Kessler Topaz Meltzer & Check LLP ("KTMC").  Relator opposes defendants' motion.  Dkt. Nos. 195 ("Singh Opp'n"), 196 ("KTMC Opp'n"), 197 ("P&C Opp'n").[1]  Defendants filed a reply on February 27, 2026.  Dkt. No. 203 ("Reply").[2]  For the reasons set forth below, the Court GRANTS in part and DENIES in part defendants' motion.

**BACKGROUND**

This motion arises out of a *qui tam* action originally filed on May 14, 2020 by plaintiff-relator Kenley Emergency Medicine Corporations ("relator") under the False Claims Act, 31 U.S.C.

---

[1] In opposing the motion, each of relator's counsel filed its own opposition brief.  Many of relator's arguments are incorporated by reference into all of the briefs.

[2] Relator also filed evidentiary objections to the supplemental reply declaration of Barry Pollack filed in support of defendants' motion to disqualify.  Dkt. No. 208.  The Court does not rule on relator's evidentiary objections because this order does not rely on the evidence at issue.

§ 3729, *et seq*. Dkt. No. 1. This factual and procedural background section is limited to facts relating to the motion at issue.

Relator corporation is owned and operated solely by Dr. Eric Kenley, a board-certified emergency physician. Dkt. No. 98 ("TAC") ¶ 16. Dr. Kenley works at Chinese Hospital in San Francisco which contracts with defendants, The Schumacher Group of Louisiana, d/b/a/ SCP Health ("SCP"). *Id.* ¶ 17. Defendants "provide[] staffing and management services to hospitals and health care facilities throughout the county." *Id.* Relator alleges in its complaint that defendants have engaged in "upcoding" which involves systematically charging for more expensive emergency room healthcare than was actually provided to patients across the country. *Id.* ¶ 72. Singh represented relator at the time the action was filed. Mot. at 8.

Beginning May 11, 2020, three days before the *qui tam* complaint was filed, Dr. Kenley conveyed his upcoding concerns to various SCP executives, including a Group Medical Officer ("GMO") and an SCP "Compliance Officer." Mot. at 8. The complaints were soon elevated to SCP's General Counsel & Chief Compliance Officer, Sarah Crass. *Id.* After relator filed the original complaint on May 14, 2020 and while the action was under seal, a series of privilege issues arose. *Id.*[3]

Defendants suggest that Singh played a role in orchestrating Dr. Kenley's post-complaint communications with SCP to intentionally generate privileged information. *Id.* at 11, 18, 21. Singh denies involvement in this capacity. *Id.* at 11; Singh Opp'n at 3.

On May 28, 2020, Dr. Kenley joined a "Webex meeting with SCP to discuss responses to his questions." Mot. at 9.[4] On June 3, 2020, Dr. Kenley communicated his concerns to SCP's Chief Medical Officer ("CMO") by email. *Id.* at 9-10, Pollack Decl. Ex. 5. That same day, Dr. Kenley emailed the CMO a letter he wrote to General Counsel explaining his concerns about SCP's coding and billing practices and requesting General Counsel's "opinion," "analysis and recommendation."

---

[3] Pursuant to False Claims Act procedures, the *qui tam* action was under seal until April 9, 2024. Dkt. No. 40.

[4] The parties dispute whether General Counsel was present at the Webex meeting and whether the communications were privileged.

United States District Court
Northern District of California

*Id.* at 10, Pollack Decl., Ex. 6. Dr. Kenley continued to receive updates from the General Counsel and the CMO, which defendants state included "privileged information about the compliance work in progress being overseen by outside counsel." *Id.* at 11-12. Some communications "described consulting work being done under the supervision of outside counsel, and other potential work on the processes, which outside counsel guided or supervised." *Id.* On June 24, 2020, General Counsel provided another written update to Dr. Kenley about SCP's work with outside counsel. *Id.*, Pollack Decl., Ex. 10. In his communications with SCP personnel, Dr. Kenley did not reveal either the pending *qui tam* action or that he was then represented by counsel. *Id.* at 11.

On June 30, 2020, September 14, 2020, and October 28, 2020, relator's counsel sent three supplemental disclosures to government agencies containing information Dr. Kenley gathered through his conversations with SCP personnel. *Id*. at 11-12. On July 17, 2020, Singh filed the First Amended Complaint. *Id.* at 12. On August 17, 2020, Singh filed the Second Amended Complaint and referenced the May 28 Webex meeting with SCP in a footnote. *Id.*; Dkt. No. 16 ¶ 13.

General Counsel continued to communicate with Dr. Kenley about further updates through at least September 24, 2020, when the CMO and General Counsel met with Dr. Kenley informing him of certain business changes that SCP determined to make effective October 1, 2020. Mot. at 12.

Relator retained P&C as counsel in February 2021. P&C Opp'n at 2, Sylvia Decl. at ¶ 7. During the intake process in late 2020 to early 2021, a P&C intake employee noticed that case documents transmitted to P&C contained attorney communications. Mot. at 11-12. P&C states that it "rejected the materials Singh sent because they contained reference to Defendants' counsel." P&C Opp'n at 2. According to P&C, the rejected materials were never distributed to members of P&C, and P&C does not have possession of them. *Id.* at 2-3.

As a result of this potential privilege issue[5], in December, 2020 Singh met with Michael Indrajana, his "own ethics counsel." On or around January 15, 2021, Singh sequestered the attorney

---

[5] On November 23, 2020, at an initial relator's interview, the Department of Justice ("DOJ") also suggested to Singh "the *possibility* a privilege issue might exist." Singh Decl. ¶ 15.

communications with Indrajana as "walled counsel" (or "taint counsel"). Singh Opp'n at 3, Singh Decl. ¶¶ 15-25, Indrajana Decl. ¶¶ 1-7. Indrajana and Singh share the same office space but operate separate legal practices governed by a formal written agreement executed in 2017. Indrajana Decl. ¶ 1, Singh Decl. ¶¶ 17-23. Also on January 15, 2021, Singh conducted a "claw back" of materials he had provided to the government agencies in the three disclosures. Singh Decl. ¶¶ 15-16.

A Third Amended Complaint ("TAC") was then filed on June 4, 2021, which also included references to Dr. Kenley's post-filing communications with SCP. Mot. at 13; TAC ¶¶ 83-88. According to both Singh & P&C, P&C led the effort to draft and file the TAC. Singh Opp'n at 3, Singh Decl. ¶¶ 10-14; P&C Opp'n at 3. P&C maintains that in drafting the TAC, "P&C did not review, use, or refer to any disputed materials." P&C Opp'n at 3.

On April 5, 2024, the United States declined to intervene in the *qui tam* action, and the Court unsealed the matter a few days later. Mot. at 13. On September 4, 2025, defendants filed a motion to seal and redact privileged communications from the TAC. *Id.* Relator assented and the Court granted the motion. *Id.* Relator's counsel did not inform defendants or the Court of the government claw back or of the existence of walled off counsel. *Id.*

In early September 2025, the alleged privilege issues came to light after defendants filed public records requests with the government agencies to which relator had made submissions. *Id.* at 14-16. The public records requests revealed that on January 15, 2021, relator's counsel had requested to claw back certain disclosures counsel had made to a government agency while the case was under seal. *Id.* at 14. Between September 2025 and January 2026, defendants asked relator's counsel to provide an explanation for the claw back request. *Id.* at 14-16. On January 31, 2026, relator's counsel explained via email that the clawed back information had been disseminated to the government agencies in 2020 and that Singh had since deleted the materials. *Id.* at 16. The email further explained that "Relator had engaged a 'separate attorney' to keep a copy of the documents and threatened that, to the extent Defendants did not log materials, 'separate counsel' would release the materials to Relator's counsel." *Id.*

A February 6, 2026 letter from relator's counsel disclosed that Singh had "deleted copies of the June 30, September 14, and October 28, 2020 disclosures to the government and related exhibits

4

because 'those disclosures and related exhibits referenced Dr. Kenley's interactions' with Defendants' General Counsel, and provided those documents to [Michael] Indrajana, whom it described as 'taint' counsel." *Id*. Defendants refute the purported independence of Indrajana, pointing out that Singh and Indrajana share an office suite and clients. *Id.* at 18.

On February 11, 2026, defendants filed this motion alleging that relator's counsel (1) improperly provided potentially privileged communications between Dr. Kenley and defendants to relevant government agencies, (2) failed to disclose the privilege issue to defendants after the matter was unsealed and after numerous requests from defense counsel, and (3) improperly maintained purportedly independent "walled-off" taint counsel. *Id.* at 3, 5. Defendants move to have relator's counsel Singh and P&C disqualified. *Id.* at 6. Defendants do not seek to disqualify KTMC.

**LEGAL STANDARD**

The decision whether to disqualify counsel is committed to the discretion of the district court. *See Gas-A-Tron of Ariz. v. Union Oil Co. of Calif.*, 534 F.2d 1322, 1325 (9th Cir. 1976). Disqualification motions "should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). "Generally, outright disqualification is disfavored because it may drastically affect several important interests—a client's right to choose counsel, an attorney's interest in representing a client, the financial burden on a client who must replace disqualified counsel, and the possibility that the disqualification motion is merely pursued for tactical reasons." *QuickLogic Corp. v. Konda Tech., Inc.*, 618 F.Supp.3d 873, 880 (N.D. Cal. 2022) (citation omitted). On the other hand, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and in the integrity of the bar." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1145 (1999).

"In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the Court first refers to the local rules regulating the conduct of members of its bar." *In re Examination of Privilege Claims*, 2016 WL 11164791 (W.D. Wash. May 20, 2016). Lawyers who practice in the Northern District of California must "[b]e familiar and comply with the standards of professional conduct required of members of the State Bar of

5

California." Civ. Local Rule 11-4(a). Therefore, the Court applies California law and the California Rules of Professional Conduct ("CA RPC") to the disqualification analysis. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

**DISCUSSION**

**I.    Disqualification of Singh**

Defendants argue that Singh should be disqualified as counsel for relator in this matter because from late May 2020 through September 2020, while the case remained under seal, Dr. Kenley "targeted the generation of attorney-client privileged information belonging to SCP by engaging in privileged written and oral communications and inquiries with General Counsel and executives who in turn interacted with outside counsel that guided and supervised the responses, while Singh worked on amending iterations of the complaint and supplementing disclosures to the government." Mot. at 19. According to defendants, Dr. Kenley and Singh improperly obtained SCP's privileged material and outside counsel's work product, and Singh improperly used this information to relator's advantage in litigating the present case. *Id.* at 4-5; Reply at 3-5, 8-11. Defendants contend that Singh should have disclosed these communications to the Court when the privilege issues arose in 2020, or at the very least should have disclosed these communications to the Court or defendant's counsel after the complaint was unsealed in April 2024. Reply at 5.

Singh contends that his disqualification is unwarranted because his conduct did not violate any ethical rules and he acted in good faith. Singh Opp'n at 2.

For the reasons discussed below, the Court determines that Singh violated his ethical duties and should be disqualified.

**A.    CA RPC 4.2: Communication with Represented Person**

Defendants suggest that Singh broke ethical rules when Dr. Kenley initiated communication with Crass and other SCP personnel after filing his sealed complaint without revealing he was pursuing the present action or that he was represented by counsel. Mot. at 19. Defendants' motion does not point to specific ethical rules governing *qui tam* actions that relator's conduct allegedly

6

violated.[6]  In reply and at the hearing, defendants clarified that they invoke California Rule of Professional Responsibility ("CA RPC") 4.2, which prohibits a lawyer representing a client from "communicat[ing] directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter" without consent from the other lawyer.  CA RPC 4.2; Reply at 3-4 & n.1.  Defendants contend that both Singh and Dr. Kenley knew that SCP had turned to outside counsel, yet Singh continued to indirectly ingratiate himself in conversations with SCP officers represented by counsel through Dr. Kenley.  Reply at 3, Pollack Suppl. Decl., Ex. C.

Relator argues that the FCA precludes a relator from revealing a *qui tam* case exists while it is under seal and that "as a non-lawyer, Kenley had no obligation to refrain from speaking with SCP's in house counsel even if [Crass] were acting in that capacity."  P&C Opp'n at 7-8.  At the same time, P&C acknowledges that "the government typically instructs relators not to investigate on their own once the case is filed."  Sylvia Decl. at ¶ 25.

FCA provisions do not explicitly prohibit a *qui tam* plaintiff from communicating with a defendant while the case is under seal and the government is investigating the claim.  *See U.S. ex rel. Thomas v. Duke University*, 2018 WL 4211372 (M.D. N.C. Sept. 4, 2018).  "[T]he seal provisions limit the relator only from publicly discussing the filing of the qui tam complaint. Nothing in the FCA prevents the qui tam relator from disclosing the existence of the fraud."  *Am. C.L. Union v. Holder*, 673 F.3d 245, 254 (4th Cir. 2011).  Thus, Dr. Kenley reporting his concerns to SCP personnel without revealing he was represented by counsel did not by itself constitute a violation of ethical rules.

However, the Court finds that Singh violated CA RPC 4.2 by indirectly communicating with SCP employees who were represented by another lawyer.  The prohibition against communicating "indirectly" with a person represented by counsel "is intended to address situations where a lawyer

---

[6] Defendants argue that "in a *qui tam* action, counsel have obligations to inform the Court [of its possession of another's apparently privileged information] while the action remains sealed, and to disclose the matter to opposing counsel promptly upon unsealing."  Mot. at 19.  At the hearing, defendants clarified that they are invoking an attorney's general ethical obligations, not any specific obligations unique to *qui tam* actions under the False Claims Act.

7

seeks to communicate with a represented person through an intermediary such as . . . the lawyer's client." CA RPC 4.2, Comment 3. CA RPC 4.2 is clear that "in the case of a represented corporation…this rule prohibits communications with: (1) A current officer . . ." CA RPC 4.2(b)(1). This ethical rule applies even when an officer of a corporation represented by counsel "initiates or consents to the communication." *See id.*, Comment 1. Still, an attorney must "immediately terminate communication" upon learning the person is represented. It appears Singh was essentially communicating with Crass through Kenley, despite knowing that SCP had retained outside counsel. The Court agrees with defendants that "Singh cannot credibly deny knowing about the involvement of SCP's General Counsel and outside counsel as Kenley grew its interaction with SCP's officer group." Reply at 3-4. Therefore, the Court concludes Singh violated CA RPC 4.2.

### B.      CA RPC 4:4: Privileged Documents

The crux of defendants' argument is that Singh violated his ethical duties and tainted relator's case by improperly invading defendants' attorney-client privilege and outside counsel's attorney work product. Mot. at 19-23; Reply at 3-5, 8-11.

An attorney who receives privileged documents that were inadvertently produced "may not read a document any more closely than is necessary to ascertain that it is privileged. Once it becomes apparent that the content is privileged, counsel must immediately notify opposing counsel and try to resolve the situation." *Rico v. Mitsubishi Motors, Corp.*, 42 Cal. 4th 807, 810 (2007) (affirming disqualification of an attorney who examined a document privileged by the attorney work product doctrine more closely than was necessary to determine that its contents were confidential). For this ethical duty to trigger, it must be "reasonably apparent" that privileged materials were provided or made available through inadvertence. *State Comps. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656 (1999); *see also Rico*, 42 Cal. 4th at 818 ("In applying the rule, courts must consider whether reasonably competent counsel, knowing the circumstances of the litigation, would have concluded the materials were privileged, how much review was reasonably necessary to draw

that conclusion, and when counsel's examination should have ended.").[7]

Defendants argue that Singh violated this duty by failing to disclose potentially privileged information obtained by Dr. Kenley's communications with SCP personnel to opposing counsel or the Court, even after the case was unsealed on April 9, 2024. Mot. 19-20. Defendants learned of the clawed back supplemental disclosures in September 2025 through a public records request and "promptly requested from relator's counsel an explanation for this apparent spoliation of evidence." Mot. at 14, Pollack Decl. Ex. 18. According to defendants, relator's counsel "denied sufficient knowledge . . . only to become more evasive each call." Mot. at 5.

Singh argues that he did not violate any ethical duty by failing to report to opposing counsel or the Court the communications between Dr. Kenley and SCP's personnel because Singh did not use the documents, but rather promptly established a wall in January 2021 to keep the documents sequestered with Indrajana. Singh Opp'n at 9, Singh Decl. ¶¶ 15-25. Furthermore, Singh argues that "nothing was labeled privileged" or bore "any other indica suggesting that a privileged exchange was occurring." Singh Opp'n at 8; *see also* Kenley Decl. ¶ 3; Singh Decl. ¶ 5. Singh attempts to distinguish two of defendants' authorities *Gomez v. Vernon*, 255 F.3d 118, 1134 (9th Cir. 2001) and *Clark v. Superior Court*, 196 Cal. App. 4th 37, 43 (2011) from the present case because *Gomez* involved documents where there was "no serious question that the material in the [] case was privileged" and *Clark* involved documents "prominently marked 'Attorney-Client Privileged.'" *Id.* at 8-9.

Indeed, Singh's primary argument that he did not violate ethical rules is that "there is no privilege to have 'invaded'" because defendants have not established attorney client privilege existed and have waived any privilege that may have existed. Singh Opp'n at 7. Singh raises several arguments to this effect.[8] First, Singh argues that Crass "wore two hats – that of General

---

[7] Similarly, CA RPC 4.4 states: "Where it is **reasonably apparent** to a lawyer who receives a writing relating to a lawyer's representation of a client that the writing was inadvertently sent or produced, and the lawyer **knows or reasonably should know** that the writing is privileged or subject to the work product doctrine, the lawyer shall: (a) refrain from examining the writing any more than is necessary to determine that it is privileged or subject the work product doctrine, and (b) promptly notify the sender." CA RPC 4.4. (emphasis added).

[8] Singh's arguments that attorney-client privilege does not attach to the relevant

Counsel, a dual legal-business role, and that of Chief Compliance Officer, a business role,"[9] and that Crass's communications with Dr. Kenley occurred while Crass was in her Chief Compliance Officer capacity not her General Counsel capacity. KTMC Opp'n at 4. Second, Singh argues that even for communications Crass may have made while wearing her General Counsel "hat", defendants cannot show that the "primary purpose" of her communications with Dr. Kenley was to give or receive legal advice, as opposed to business advice. *Id.* at 5. Third, Singh argues that even if Dr. Kenley had been seeking legal advice, *Upjohn* does not extend SCP's corporate privilege to Dr. Kenley's communications with Crass because Dr. Kenley was an independent contractor not an employee of SCP. *Id.*[10] Fourth, Singh argues defendants have waived any privilege that might have existed.

Federal privilege law applies in this federal False Claims Act case with pendent state law claims. *See Agster v. Maricopa Count*, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."); *see also* Fed. R. Evid. 501.[11] "The attorney-client privilege protects confidential communications

---

[footnote] communications discussed below are drawn primarily from KTMC's brief, which Singh joins. *See* Singh Opp'n at 7; KTMC Opp'n at 3-8. Defendants address each of these arguments in their reply brief.

[9] KTMC's opposition brief points out that this arrangement where Crass was both General Counsel and Chief Compliance Officer runs contrary to U.S. Department of Health & Human Services, Office of Inspector General (HHS-OIG) health care compliance guidance. *See "General Compliance Program Guidance*, https://oig.hhs.gov/compliance/general-compliance-program-guidance/ (last accessed Feb. 25, 2026) ("the compliance officer should not lead or report to the entity's legal or financial functions, and should not provide the entity with legal or financial advice or supervise anyone who does.").

[10] A corporation's privilege extends to communications between corporate employees and corporate counsel where the communications are made "at the direction of corporate superiors in order to secure legal advice." *Upjohn v. United States*, 449 U.S. 383, 394 (1981). Federal courts have expanded *Upjohn* to allow privileged communications with a contractor who "in all relevant respects [was] the functional equivalent of an employee." *See In Re Bieter Co.*, 16 F.3d 929, 937-38 (8th Cir. 1994); *U.S. v. Graf*, 610 F.3d 1148, 1159 (9th Cir. 2010).

[11] With this said, "even when applying federal common law, [we] may also look to state privilege law – here, California's – if it is enlightening." *Williams v. Cochrane, LLP v. Rosette*, 2024 WL 1651666, at *2 (9th Cir. Apr. 17, 2024) (quoting *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) (international quotation marks omitted).

between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Traditionally, an eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation,* 974 F.2d 1068, 1071 n. 2 (9th Cir.1992) (quoting *United States v. Margolis (In re Fischel),* 557 F.2d 209, 211 (9th Cir.1977)). Under federal law, the attorney-client privilege is "strictly construed" because "it impedes full and free discovery of the truth." *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). "[A] party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication." *Id.* at 607 (9th Cir. 2009) (emphasis in original); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii).

The Court finds none of Singh's arguments that no privilege exists to be persuasive. While minimal examination is allowed to determine the nature of a potentially privileged document, the Court notes that the proper question here is whether it should have been "reasonably apparent" to Singh that the communications presented privilege issues. *See State Comp. Ins. Fund*, 70 Cal. App. 4th at 656; *Rico*, 42 Cal.4th at 818. At the bottom of the emails between Kenley and SCP's General Counsel, there were warnings that the messages may contain "confidential, proprietary, legally privileged, or private healthcare information." Dkt. Nos. 188-11, 188-14, 188-18, 188-19. Moreover, the issue is not whether a single document was or was not privileged, it is broader misconduct involving ongoing communications between Dr. Kenley and SCP's counsel. The Court concludes that it should have been reasonably apparent to Singh that at least some of the communications in question were subject to the attorney-client privilege and inadvertently disclosed to defendants through Dr. Kenley. Singh was therefore required to disclose these materials to the Court or to defendants, once the matter was unsealed. [12]

---

[12] In defendants' reply brief, defendants contend that relator's handwritten notes from discussions with SCP's CMO and General Counsel from meetings on August 18, 2020 and September 24, 2020 include outside counsel's attorney work product. Reply at 3, 10-12; Pollack Suppl. Decl., Exs. B & C. Defendants argue that waiver does not apply and that outside counsel's

The Court agrees with defendants' argument that "feigning ignorance" or "play[ing] 'dumb'" as to privilege issues cannot excuse Singh's failure to inform defendants of relator's possession of potentially privileged materials after the matter was unsealed. *See U.S. ex rel. Frazier v. IASIS Healthcare Corp.*9, 2012 WL130332, at *15 (D. Ariz. Jan. 10, 2012) ("Qui Tam Counsel did engage in misconduct by withholding [defendant's] documents and failing to seek either a court ruling while the case was sealed or failing to contact [defendant] after the seal was lifted."). Furthermore, Singh's actions show the privilege issues were reasonably apparent to him. After supplemental disclosures summarizing Dr. Kenley's communications were provided to the government in June, September, and October 2020, Mr. Singh then "initiated a clawback and established a comprehensive ethical wall." Singh Opp'n at 3. Singh's declaration acknowledges that the DOJ told him of "the *possibility* a privilege issue might exist," as did P&C in December 2020. Singh Decl. ¶ 15. Singh states it was only "[o]ut of an abundance of caution, after engaging [his] own ethics counsel" that he initiated the claw back, deleted his copies of materials that referenced potentially privileged communications, and engaged Indrajana as "separate walled counsel" to take custody of the sequestered materials and conduct a privilege review. *Id.* ¶¶ 15-17. Still, these precautionary actions demonstrate that Singh knew there were potential privilege issues. While Singh took actions to attempt to address those issues, he did not address the issues with the Court or notify opposing counsel after the unsealing of the case, as California's ethical rules would require.[13] Thus, the Court finds Singh violated CA RPC 4.4

## C.    Disqualification

For the Court to disqualify Singh, defendants must show not only a violation of the California Rules of Professional Conduct, but also that the equities weigh in favor of

investigative work was made in anticipation of litigation. Reply at 10-12. Having concluded that Singh violated ethical duties as to potentially privileged communications, the Court need not resolve this question.

[13] The CA RPC specify that if a lawyer determines that privileged information was inadvertently transmitted to him, he should either notify the sender "or seek guidance from a tribunal." CA RPC 4.4, Comment 1; *see Rico*, 42 Cal. 4th at 817.

United States District Court
Northern District of California

disqualification. *See e.g. Witt v. Ross*, 2025 WL 2968025, at *2 (N.D. Cal. Oct. 20, 2025). "Disqualification is proper where, . . . through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation." *Gregori v. Bank of America*, 207 Cal. App. 3d 291, 309 (1989). The moving party must demonstrate a "genuine likelihood" that the challenged conduct "will affect the outcome of proceedings." *Id.* at 308-09.

Singh argues that there is minimal likelihood of prejudice because Singh never used the materials except for the supplemental disclosure of the communications to the federal government, which were then clawed back and sequestered. Singh. Opp'n at 10, Singh Decl. ¶ 16. Moreover, Singh argues that an ethical wall has been in place since 2021, the materials have not been used, and litigation counsel has not seen them for five years. *Id.*

Defendants argue that Singh's activities prejudice them because relator's "transgressions impacted amendments to pleadings, and Singh used the information in supplemental disclosures to the government." Mot. at 24. SCP's CMO and Vice President, Compliance and Privacy, explain in declarations filed with defendants' reply that defendants' ongoing conversations with Dr. Kenley would not have occurred had they known Dr. Kenley was represented by counsel. Dkt. No. 202-5 ("Bertrand Decl."); Dkt. No. 202-4 ("Schillinger Decl.") Additionally, defendants argue that relator's conduct has interfered with defendants' discovery strategy for more than a year. Pollack Suppl. Decl. ¶ 33. At the hearing, defendants argued that Dr. Kenley learned of the national scope of the query process through his post-filing communications with SCP personnel, which expanded the "geographic scope" of the case in the SAC and TAC. Defendants' counsel argued that the "evolution of the complaint" from events at only Chinese Hospital to nationwide hospitals and the addition of seventeen state plaintiffs is evidence of prejudice.

The Court agrees with defendants that Singh's activities were likely prejudicial to defendants' case. Through Dr. Kenley, Singh invaded defendants' privileged communications and used these communications to inform relator's supplemental disclosures to government agencies and to add details to the complaint. While it is unclear to the Court which exact documents were given to the government, it is undisputed that the disclosures referred to communications with

United States District Court
Northern District of California

13

defendants' lawyers.  The SAC and TAC were also amended to include more details about defendants' processes, as informed by Dr. Kenley's ongoing conversations with SCP personnel. Accordingly, Singh's disqualification is warranted because defendants have shown a "genuine likelihood" that Singh's conduct will prejudice defendants.  *See Gregori*, 207 Cal. App. 3d at 308-309.[14]

Furthermore, Singh's disqualification is not unduly prejudicial to relator because relator has other counsel and Singh stated at the hearing he is no longer lead counsel. Singh's disqualification it only a small infringement on relator's choice of counsel and relator is not forced to replace Singh. *See QuickLogic Corp,* 618 F.Supp.3d at 880 (stating disqualification is disfavored where it drastically affects "a client's right to choose counsel" and "the financial burden on a client who must replace disqualified counsel").  Moreover, disqualification is warranted "to preserve public trust in the scrupulous administration of justice and in the integrity of the bar."  *See People ex rel. Dept. of Corporations.*, 20 Cal. 4th at 1145.

In sum, the Court finds disqualification of Singh as relator's counsel appropriate.

## II.     Disqualification of P&C

Defendants argue that P&C should be disqualified as counsel for relator in this matter because P&C improperly hid the privilege issues from the Court and opposing counsel and because Singh's transgressions impute to P&C as co-counsel.  Mot. at 20-21.  According to defendants, P&C added detail to the TAC concerning privileged communications between Dr. Kenley and SCP personnel post-filing.  Reply at 12-13; *see* Dkt. No. 24 ¶¶ 83-88, 112-113. Defendants argue that while "P&C denies access to documents, . . . it had access to Relator and Singh, and Relator had access to the privileged information, as well as a memory and notes of post-filing interactions and

---

[14] Defendants also argued in their briefing and at the hearing that "while a defense exists here based on the strength of SCP's compliance efforts showing that no inaccurate billing would have been done 'knowingly,' Relator's persistent invasion of SCP's legal workings has irreversibly tainted Defendants' ability to present to a jury a fair and untainted portrayal of the compliance process overseen by outside counsel."  Mot. at 4-5.  At the hearing, defendants suggest that a jury will not be able to appreciate the subtlety of why defendants might accommodate someone who isn't represented by outside counsel more than someone who is.  The Court is unpersuaded by this argument.

United States District Court
Northern District of California

discussions when alleging the content of the May 28, 2020 meeting in Paragraph 84, and the national scope of the internal investigation in Paragraphs 87 and 88." *Id.* Defendants argue these modifications to the complaint were prejudicial because "those post-filing interactions supported a dramatic expansion in the number of plaintiffs in the TAC, beyond just the DOJ and California, to 17 other states." *Id.*

P&C contends that the firm took "affirmative steps" to refuse the potentially privileged information and "Singh's (but not P&C's) purported use of it cannot warrant disqualification of P&C." P&C Opp'n at 1-2. P&C states that it never used this information. *Id.* at 6. Further, P&C asserts that it had no obligation to inform defendants of Singh's possession of the documents. *Id.* at 7. At the hearing, P&C also explained that expanding plaintiffs to include other states is their typical practice in these types of cases.

As discussed above, to disqualify P&C, the Court must determine whether counsel's actions violated California Rules of Professional Conduct and if so, whether the challenged conduct likely prejudices the moving party. *Gregori*, 207 Cal.App.3d 308-09.

The Court finds P&C has generally complied with its professional responsibilities. P&C rejected the privileged documents upon receipt. P&C Opp'n at 5. P&C's policy specifies that if potentially privileged information is submitted, "that information will be deleted and the [sender] will be instructed not to submit any information involving or potentially involving information to or from an attorney for the defendant." Sylvia Decl. ¶ 3. And, at the hearing, P&C stated that Dr. Kenley was told not to discuss anything about communications he had with defendants' lawyers. [15] The information Singh clawed back "was never provided to P&C, let alone used by P&C" and KTMC's walled off counsel "prevent[ed] Relator's counsel from seeing or obtaining any documents referencing Defendant's in-house counsel." P&C Opp'n at 6. Lastly, the Court does not find that P&C was obligated to report to the Court or opposing counsel Singh's prior possession and/or disclosure to the government of the disputed information. That obligation rests with Singh as

---

[15] "Pursuant to P&C policy and practice, the intake coordinator instructs potential clients not to disclose any information involving attorneys of the potential defendant or defendants, who are often the employer of the person inquiring about bringing a False Claims Act case and could be exposed to such information." Sylvia Decl. ¶ 3.

receiver. CA RPC 4.4. For these reasons, the Court does not find that P&C's behavior or failure to act constitutes misconduct.

The Court also does not find vicarious disqualification of P&C to be appropriate. The vicarious presumption rule extends disqualification to other attorneys at the same law firm. *Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F. Supp. 2d 900, 909 (C.D. Cal. 2012). Whether the rule applies to co-counsel is not settled law in California. *Beltran v. Avon Prods., Inc.*, 867 F. Supp. 2d 1068, 1076 & 1084 (C.D. Cal. 2012) (explaining that "there is no direct California authority regarding vicarious disqualification of an associated law firm.") To determine whether to extend disqualification to co-counsel, courts look to the specific circumstances of the case and decide whether it can be presumed that co-counsel shared or possessed the confidential information at issue. *Advanced Messaging Techs., Inc.* 913 F. Supp. 2d at 909-910.

Here, there is no presumption that P&C possesses confidential information about SCP. Defendants' primary authority is distinguishable. The court in *Beltran* held that vicarious disqualification of an associated law firm was warranted because the law firms had collaborated in the filing of the complaint, and it was "reasonable to assume that the two law firms engaged in fairly extensive discussions about the case." 867 F. Supp. 2d at 1084; *see also Advanced Messaging Techs.*, 913 F. Supp. 2d at 910. The same cannot be said here. Upon P&C's involvement in this case, P&C's intake coordinator rejected materials sent to P&C by Singh. P&C Opp'n at 2. P&C contends that no lawyer or staff person has seen the purportedly privileged documents since then. *Id.* at 5. Counsel explained at the hearing that the TAC was expanded to include state plaintiffs as a matter of routine practice, stating "We often do that…it wasn't based on anything that Dr. Kenley told me." The Court does not find P&C's conduct prejudicial enough to warrant P&C's disqualification without evidence of wrongdoing. Moreover, the evidence does not suggest that P&C's continued involvement in the case would "taint the appearance of probity and fairness of the proceedings." *Beltran*, 867 F. Supp. at 1084.

Therefore, the Court DENIES defendants' motion as to P&C.

16

### III.    Other Relief

Defendants also request several other remedies. Mot. at 23. First, defendants request the case be dismissed. *Id.* Relator argues that the extreme remedy of dismissal is inappropriate, for the same reasons that it argues disqualification is inappropriate. P&C Opp'n at 10. The Court finds dismissal an inappropriate and unduly harsh remedy.

Second, defendants request that if the case is not dismissed, the Court unseal certain docket entries to support an evidentiary hearing concerning appropriate remedies. Mot. at 1, 23-24. Relator did not oppose that request, nor did the government. *See* P&C Opp'n at 10; Dkt. No. 199. The Court granted defendants' unsealing request prior to the hearing on this matter at Dkt. Nos. 200, 201.

Third, in order to establish that relator's actions caused substantial prejudice, defendants sought "expedited discovery or, if needed, an *in camera* inspection of materials concerning (1) at least factual portions of Singh's supplemental disclosures and cover correspondence to the government agencies concerning the content of Dr. Kenley's post-filing communications with SCP; (2) those portions of Dr. Kenley's communications with his counsel that refer to the content of his post-filing communications with SCP between June 3, 2020 (after learning the involvement of outside counsel) and October 28, 2020 (after he learned of business changes that had been made and ongoing work); (3) the engagement terms and undertakings by Indrajana as counsel in connection with this matter; and (4) the communications with government agencies about the claw back efforts, which the California Department of Insurance did not treat as privileged." Mot. at 23-24.

Singh argues that defendants' request for discovery should be denied because these materials are privileged, and that instead, to the extent documents are considered privilege they should be destroyed. Singh Opp'n at 15.

Having concluded that disqualification of Singh is appropriate and that P&C violated no ethical rules, the Court finds it unnecessary to conduct an *in camera* inspection of withheld correspondence between Singh and government agencies and Singh and relator at this time. Therefore, the Court DENIES this request without prejudice. To the extent defendants wish to seek additional remedies, they may file a motion to that effect with the Court.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court GRANTS IN PART and DENIES IN PART defendants' motion.  The Court hereby disqualifies Singh as relator's counsel.


**IT IS SO ORDERED**.

Dated: March 17, 2026

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

18